RECEIVED
IN ALEXANDRIA, LA

MAY 13 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| WILLIAM STAPLES<br>    FED. REG. # 07725-089<br>VS. | CIVIL ACTION NO.1:09-CV-2143<br>SECTION P<br>JUDGE DRELL |
| WARDEN JOE KEFFER | MAGISTRATE JUDGE KIRK |

## REPORT AND RECOMMENDATION

*Pro se* petitioner William Staples filed the instant petition for writ of *habeas corpus* on December 11, 2009. Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP). He is incarcerated at the United States Penitentiary, Pollock (USP-POL) and he claims that his due process rights were violated in two prison disciplinary incidents that occurred in the latter part of 2008 and the beginning of 2009 when he was incarcerated at the United States Penitentiary, Leavenworth, Kansas (USP-LVN). As a result of these incidents, sanctions, including the loss of good time credits were imposed and petitioner was transferred to his current place of incarceration. By this proceeding, petitioner presumably seeks the restoration of his good time credits and the expungement of the disciplinary rules convictions.

This matter has been referred to the undersigned for

review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

## Background

### 1. Incident Report No. 1801509

Petitioner is an inmate in the custody of the BOP. In November 2008 he was incarcerated at the USP-LVN. On November 18, 2008 he was charged with stealing a typewriter from the prison law library. The incident occurred on November 15, 2008; it was discovered on November 17, 2008, and the incident report was delivered to petitioner on November 18, 2008.[1]

Petitioner went before the Unit Disciplinary Committee (UDC) on November 19 and his case was referred to the Disciplinary Hearing Officer (DHO). The DHO hearing was convened on December 4, 2008. Petitioner denied the charge, however, the

---

[1] The incident report alleged, "On November 17, 2008 at approximately 12:00 p.m. I became aware that a typewriter was missing from the Law Library. I proceeded to the SIS department and viewed video of the Law Library beginning on Saturday, November 15, 2008. At 8:07 a.m. I noticed an inmate, positively identified as Inmate Staples, 07225-089 place a typewriter in a bag and set it under a table in the Law Library. Continued video surveillance shows Inmate Staples 07225-089 retrieve the bag containing the typewriter at 9:31 a.m. and leave the library and return to his cell. Inmate Staples 07225-089 had possession of the typewriter and placed in cell 136 in ACH Level I." [Doc. #1-3, p. 1]

DHO found him guilty and imposed sanctions including the forfeiture of 27 days good time credits, 30 days disciplinary segregation, and 60 days loss of commissary, telephone, and visitation privileges.

On January 13, 2009 petitioner appealed the DHO's decision to the Warden at USP-LVN. Petitioner denied the theft and alleged the following errors:(1) that he did not receive "... a copy of the evidence or statements used against me to defend against..." (2)that he did not receive a copy of the Incident Report within 24 hours after staff became aware of the incident (according to petitioner staff became aware of the incident on November 17, 2008 at 12:00 p.m. and he received the report on November 18 at 1:07 p.m.); (3) that he did not get a copy of the UDC's written decision by the end of the next business day, November 20, 2008; (4) that the UDC's hearing was less than 24 hours after petitioner received the incident report; (5) that the incident report misidentified the culprit as William Staples, No. 07225-089, however, petitioner is William N. Staples, No. 07725-089; (6) petitioner did not receive the DHO's decision within 10 days; (7) the DHO did not use "Progressive Sanction;" (8) the sanction of 60 days loss of commissary, phone and visitation was not appropriate to the offense; and, (9)

neither the Lieutenant or the UDC attempted informal resolution of the complaint. [Doc. #1-3, pp. 2-3]

On the same date petitioner submitted a Regional Administrative Remedy Appeal (BP-10) to the Regional Administrator of the BOP's North Central Region, where USP-LVN is located. He alleged almost identical claims as those raised in the local appeal. Petitioner also disputed the factual basis of the finding of guilt noting, "I gave a written statement pointing out that the video surveillance do not show me placing a typewriter in a bag; nor do it shows me reaching under a table to retrieve a typewriter ... if you ... look at the video surveillance it also shows me carrying my bag with my legal folders and books in the same manner going to the law library." [Doc. #1-3, pp. 4-5]

The appeal filed at the local level was rejected on January 22, 2009 because the appeal was filed at the wrong level. [Doc. #1-3, p. 6] His Regional Appeal was rejected on January 16, 2009 because petitioner did not provide a copy of the DHO report or identify the charges and date of the DHO action. [Doc. #1-3, p. 7]

Sometime in March 2009, petitioner was transferred to USP-POL. On May 20, 2009 petitioner resubmitted his Regional

4

Administrative Remedy Appeal to the Director of the South Central Region, claiming that he still had not received the DHO Report. He did, however, provide the date of the DHO Hearing, the nature of the charges, and the Incident Report Number. Petitioner again denied culpability and alleged, "The staff member gives two conflicting times of the awareness of the violation. Once he states he became aware of the violation at 12:00 p.m. and then he gives [sic] he became aware at 1:30 p.m., as such according to the body of the incident report I was not given the incident report within the prescribed time allowed within 24 hours after the staff became aware of the violation." He also complained that he was not given copies of the evidence and statement used against him and he was never provided a copy of the DHO's written decision. He also pointed out the error concerning his prisoner number and alleged that such an error could not be considered a typographical error since it occurred three times in the incident report. He also argued, "The evidence does not show me placing anything in a bag and place it under a table and nor were [sic] a typewriter found in my cell. The bag that was shown on the video that I was carrying, it was carried the same way going and coming to the library. As I was told, that the typewriter was found in one of the laundry

rooms." Finally he argued, "... there is nothing in the rules or anything posted stating that the typewriters cannot leave the library or that you have to have permission to a typewriter to [sic] your cells." [Doc. #1-3, pp. 8-9]

On July 23, 2009 the Regional Administrator for the South Central Region rejected petitioner's appeal as follows:

> The record of this disciplinary action reflects you were advised of your rights and afforded the opportunity to exercise those rights in accordance with Program Statement 5270.07, <u>Inmate Discipline and Special Housing Units</u>. After thorough review of the incident report, the investigation, the evidence and related documentation, there appears to be sufficient evidence presented to support the DHO's decision.
>
> This incident involved the DHO finding you stole an item from the Law Library. Specifically, on 11/17/08, the reporting staff member found a typewriter missing. A review of the video surveillance for the Law Library positively identified you placing the typewriter in a bag under a table in the Law Library. Continued video surveillance showed you retrieve the bag and leave the Law Library. The typewriter was found in your cell in the housing unit. The DHO considered your statement when making the determination the greater weight of evidence supported you committed the prohibited act.
>
> You contend you did not receive a copy of the incident report in a timely manner. Staff reviewed the videotape on 11/17/08, at 12:00 noon and completed the review at 3:24 p.m. You were provided with a copy of the incident report on 11/18/08, at 1:07 p.m. You were provided with a copy of the incident report in a timely manner. You also contend you did not commit the prohibited act and the reporting staff provided conflicting statements. In Section V of the DHO report, the DHO documented the evidence relied upon to

reach the conclusion you committed the prohibited act. Our review of the record indicates the DHO made the proper determination in this case. The sanctions imposed are within policy and commensurate with the finding you committed a prohibited act in the High severity category. You provide no new evidence to support you contentions. [Doc. 1-3, pp. 11-12]

In August 2009 petitioner submitted his appeal to the Central Office. He again complained that he had not received the written decision of the DHO. He complained that prior to the DHO hearing he was not provided "... a copy of all evidence and statement used against me to marshal a defense in my behalf ..." He complained that he was not provided a copy of the videotape or statements made by prison staff who claimed to have found the typewriter in petitioner's cell and he maintained that the typewriter was found in the laundry, and, in the alternative, that even if it was found in his cell, there was not policy prohibiting inmates from using typewriters in their cells. [Doc. #1-3, p. 14]

According to petitioner, the Central Office has yet to respond to his Appeal. [Doc. #1-2, ¶7-8]

**2. Incident No. 1826234**

On January 26, 2009, while still incarcerated at USP-LVN, petitioner was charged with insolence toward a staff member and

placed in administrative detention. [Doc. #1-3, p. 17] According to the incident report, petitioner used abusive and obscene language towards a corrections officer. He was served with a copy of the incident report approximately 38 minutes after the alleged event. The report was forwarded to the UDC who determined that he committed the act notwithstanding his denial. On January 28, 2009 the incident report was forwarded to the DHO and after a hearing petitioner was found guilty and was sanctioned with the loss of commissary and telephone privileges for 60 days. [Doc. #1-3, p. 18]

According to petitioner, his administrative remedies appeal at the institutional level were ignored. Therefore on April 9, 2009, while incarcerated at USP-POL, he submitted a Regional Administrative Remedy Appeal to the Regional Administrator of the South Central Region. He denied guilt and claimed that the UDC and DHO refused to question a corrections officer and petitioner's cell mate, both of whom would have corroborated petitioner's version of the events. [Doc. # 1-3, p. 22-23] Petitioner's appeals to the Regional and Central Offices were rejected on procedural grounds. [Doc. # 1-3, pp. 24-31]

Petitioner claims that because of these two disciplinary convictions, "... petitioner was then transferred to a higher

security level, raised his security points, and the case manager at USP-FCI-LVN placed a management variable on petitioner and had him sent to USP-POL." According to petitioner these two incident reports will "... further delay the transfer to a lower security institution and to the halfway house." [Doc. #1-2, ¶14]

### Law and Analysis

**1. Incident Report No. 1801509**

Federal prisoners have liberty interests in their accumulated good-time credit. See <u>Henson v. U.S. Bureau of Prisons</u>, 213 F.3d 897, 898 (5th Cir.2000). Therefore, since petitioner lost good time credits as a result of the offense detailed in Incident Report No. 1801509, the analysis approved by the Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and <u>Superintendent, Massachusetts Correctional Institution v. Hill</u>, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985), governs this review of the contested disciplinary proceeding.

In <u>Wolff</u>, the Court held, although the rights of a prisoner "...may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." Nevertheless "[p]rison disciplinary proceedings are not part of

a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.* at 555-556. Accordingly, in order for a prison disciplinary proceeding to comport with the requirements of due process the following minimal procedural safeguards must be afforded: (1) adequate notice of the alleged violation; (2) an opportunity to present evidence, (3) written findings in support of the ruling, and (4) the requirement that upon review, "some evidence" support the ruling. <u>Superintendent, Massachusetts Correctional Institution v. Hill</u>, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L. Ed.2d 356 (1985); <u>Wolff</u>, *supra*, at 556.

In <u>Hill</u>, 472 U.S. 445, 457 (1985), the Supreme Court provided guidance regarding the "some evidence" standard of review for federal courts to apply in their assessment of prison disciplinary decisions involving the loss of good conduct time credits. According to the Court, the requirements of due process are met, and the decision of the prison discipline officer must be upheld, if there is "some evidence" to support the decision. The process to be used by the reviewing court was further described as follows:

> Ascertaining whether this standard is satisfied does not require examination of the entire record,

> independent assessment of the credibility of witness, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.* at 455-56 (emphasis supplied).

Once the reviewing court determines there is "some evidence" to support the finding of the DHO, the court must reject the evidentiary challenges by the petitioner and uphold the finding of the DHO. See *Id.* at 457. "The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact." *Id.* at 456.

Petitioner has provided copies of the BOP's Incident Report, his administrative remedies appeals, and the response of the Regional Administrator. These exhibits establish beyond any doubt that petitioner received adequate notice of the alleged violation;[2] that he was afforded the opportunity to present evidence;[3] and that written findings in support of the ruling

---

[2] Petitioner admits he was served with a copy of the Incident Report on November 18, 2008 at 1:07 p.m. [see Doc. #1-3, p. 3]. The Incident Report detailed the charges and evidence against him. [See Doc. #1-3, p. 1, ¶11 "Description of the Incident."

[3] Petitioner admits that he was afforded the opportunity to present evidence. [See Doc. #1-3, p. 3, "At the hearing, I submitted my written statement of pleading not guilty and went on to raise several issues ..."]

11

were provided.[4] In other words, the exhibits establish that petitioner was afforded all the process he was due under Wolff, *supra*.

Further, the exhibits establish that there was some if not ample evidence of guilt sufficient to satisfy the standard enunciated in Hill, *supra*.[5]

In short, petitioner has not shown that he was deprived of liberty without due process; therefore, he has failed to state a claim for which relief may be given and dismissal of his petition on that basis is appropriate.

## 2. Incident No. 1826234

Petitioner also seeks *habeas corpus* relief pursuant to 28

---

[4] Petitioner has denied that he ever received the DHO's Report; however, it is clear that such a Report was prepared because reference is made to the DHO's findings in the Regional Administrator's response dated July 23, 2009. [Doc. #1-3, pp. 11-12] Further, petitioner was clearly provided a written copy of the Regional Administrator's response, and that document adequately sets out the findings made by the DHO based upon the evidence adduced at the DHO hearing as follows, "This incident involved the DHO finding you stole an item from the Law Library. Specifically, on 11/17/08, the reporting staff member found a typewriter missing. A review of the video surveillance for the Law Library positively identified you placing the typewriter in a bag under a table in the Law Library. Continued video surveillance showed you retrieve the bag and leave the Law Library. The typewriter was found in your cell in the housing unit. The DHO considered your statement when making the determination the greater weight of evidence supported you committed the prohibited act." [Id.] Assuming as true for the purposes of this Report petitioner's claim that he did not receive the DHO Report, it cannot be shown that he was prejudiced thereby.

[5] As provided in Hill, *supra*, at pp. 455-56, the Court, in assessing whether "some evidence" supports the disciplinary conviction, is not required to assess the credibility of the witnesses who provided evidence at the DHO hearing. As shown above, petitioner was observed taking the typewriter; it was later discovered in his cell. Clearly there was, at the very least, "some evidence" to support the conviction.
12

U.S.C. §2241 with respect to the second incident report. *Habeas corpus* is available only if the prisoner demonstrates that he is "... in custody in violation of the Constitution or the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

With regard to the second incident report, petitioner did not lose any good time credits as a result of this disciplinary rules violation. Instead, he lost telephone and commissary privileges for 60 days. Petitioner also argues that as a result of this latter disciplinary rules violation, he "... was transferred to a higher security level, raised his security points, and the case manager ... placed a management variable on petitioner and had him sent to USP-POL." As a result, petitioner maintains that his transfer to a lower security institution and to a halfway house will ultimately be delayed. [Doc. #1-2, ¶14]

Petitioner can utilize *habeas corpus* proceedings only if he is challenging the fact or duration of his confinement. Preiser v. Rodriquez, 411 U.S. 475, 484, 93 S.Ct. 1827, 1833, 36 L.Ed.,2d 439 (1973); see also Spina v. Aaron, 821 F.2d 1126, 1128 (5th Cir.1987). With regard to his second claim, petitioner does not attack the duration of his confinement, but rather, the conditions of his confinement based upon his current prisoner classification and his transfer from one institution to another.

Attacks on conditions of confinement are not cognizable in a *habeas* petition. See Cook v. Texas Dep't of Criminal Justice

13

Transitional Planning Dep't, 37 F.3d 166, 168 (5th Cir.1994) ("The core issue in determining whether a prisoner must pursue *habeas corpus* relief rather than a civil rights action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely the rules, customs, and procedures affecting 'conditions' of confinement.") Put another way, if "a favorable determination would not <u>automatically</u> entitle [the prisoner] to accelerated release" he may not utilize *habeas corpus* procedures and must instead vindicate his rights through a properly filed civil rights proceeding. <u>Carson v. Johnson</u>, 112 F.3d 818, 820-21 (5th Cir. 1997), quoting <u>Orellana v. Kyle</u>, 65 F.3d 29, 31 (5th Cir.1995) (per curiam), *cert. denied*, 516 U.S. 1059, 116 S.Ct. 736, 133 L.Ed.2d 686 (1996).

Petitioner's prisoner classification claim appears to contest the conditions under which he is confined and not the fact or duration of his confinement. Petitioner has not shown that success in this proceeding would <u>automatically</u> entitle him to accelerated release, and, since that is not the case, he is not entitled to relief pursuant to 28 U.S.C. §2241.

In other words, since petitioner's prisoner classification, in itself, has apparently had no effect on the <u>duration</u> of his confinement he is not entitled to *habeas* relief. Compare <u>Dixon v. Hastings</u>, 202 Fed. Appx. 750 (5th Cir. 2006)(unpublished).

14

Instead, a civil rights action[6] may be the appropriate vehicle to attack these allegedly unconstitutional conditions of confinement. Johnson v. Pfeiffer, 821 F.2d 1120, 1123 (5th Cir.1987); Preiser, 411 U.S. at 498, 93 S.Ct. at 1840-41.[7]

Even if petitioner would be entitled to a speedier release from custody should he prevail in this claim, he is still not entitled to *habeas* relief unless and until he demonstrates that his custody violates the Constitution or laws of the United States.

The BOP's classification procedures are within the discretion of the Attorney General as delegated to the Director of the BOP. See 18 U.S.C. § 4081; 28 C.F.R. § 0.96; see also Bell v. Wolfish, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Inmates generally have no due process liberty interests in their prisoner classification. See e.g. Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) ("Congress has given federal prison officials full discretion to control

---

[6] Since petitioner complains about the deprivation of rights at the hands of federal and not state actors, his cause of action would be authorized by Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

[7] Petitioner's civil rights claims would probably fare no better than his habeas claims. As shown below, due process does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner, but rather those changes that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Petitioner has not shown any atypical or significant hardship visited upon him as a result of the two complained of incidents.

these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process."); Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)(due process does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner, but rather those changes that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life); Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)).

In other words, a BOP inmate lacks any constitutional interest in his custodial classification, and his disagreement with his classification is insufficient to establish that his custody violates the Constitution. Wilson v. Budney, 976 F.2d 957, 958 (5th Cir.1992).

Absent an abuse of discretion, federal courts will not interfere with prison officials' custodial classifications. Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir.1998), abrogated on other grounds by, Booth v. Churner, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). As is shown hereinafter, petitioner has not established that prison officials abused their discretion in the classification decision. See Whitley, 158 F.3d at 889.

Petitioner has not shown through his exhibits, any Constitutional or federal statutory violation. In short, petitioner has not carried his burden of establishing that his custody is in violation of the Constitution and laws of the United States.

## Conclusion

Considering the foregoing,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** for failing to state a claim for which relief might be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by**

Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See*, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).

Signed in Chambers, Alexandria, Louisiana, on May 12, 2010.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE